## GREEN ET AL. *v.* FELTON ET AL.

[No. 6,114. Filed March 31, 1908. Rehearing denied June 5, 1908.
Transfer denied December 18, 1908.]

1. CORPORATIONS.—*By-Laws.—Adoption of.—Notice.*—Corporations have power to adopt by-laws; and the by-laws themselves constitute, as to all stockholders, sufficient notice of their adoption. p. 680.

2. SAME.—*Officers.—Salaries.*—Directors of a corporation, while performing duties pertaining to their office, are not entitled to any compensation, in the absence of an express agreement therefor. p. 681.

3. SAME.—*Officers.—Salaries.*—The salaries of officers of a corporation may be fixed in the by-laws by the stockholders; and directors cannot fix their own salaries, unless expressly authorized so to do by the charter or by the stockholders. p. 681.

4. SAME.—*Fraud.—Rights of Minority Stockholders.*—Minority stockholders, where they have been injured, have the right to sue, on behalf of the corporation, in cases of fraud, conspiracy and *ultra vires* acts of the directors. p. 681.

5. SAME. — *Constitution. — Amendments. — Reasonableness.* — The courts have no power to pass upon the reasonableness of an amendment to the constitution of a voluntary corporation, giving the directors the right to fix their own salaries, as well as the salaries of the secretary and treasurer. p. 682.

6. SAME.—*By-Laws.—Amendment.—Vote Requisite.*—Where the charter of a corporation provides that it "may be amended by a vote of two-thirds at any regular or special meeting of the company," a majority of those present, though a minority of the stockholders, may amend such charter. p. 683.

7. SAME.—*By-Laws.—Power of Courts Over.—Fraud.*—Courts, in the absence of fraud or illegality, have no power to pass upon the reasonableness of by-laws, contracts, agreements or allowances of a corporation. p. 685.

8. SAME.—*Fraud.—Salaries.*—Equity may interfere to restrain directors from appropriating the assets of a corporation to the payment of their salaries, thus reducing the corporation to insolvency. p. 685.

9 SAME.—*Salaries.—Directors.—Minority Stockholders.*—The salaries fixed by the board of directors for themselves and the president thereof are voidable at the option of dissenting stockholders, where injustice or oppression amounting to fraud is shown. p. 686.

10. CORPORATIONS.—*Receivers.*—*Injustice.*—Receivers for corporations are demandable in cases of actual wrong, injustice and injury in the management of their affairs. p. 686.

11. TRIAL.—*Special Findings.*—*Office of.*—The office of a special finding is to determine the facts upon which the judgment may rest, and if the facts necessary are not found, the judgment will fall. p. 686.

12. CORPORATIONS.—*Minority Stockholders.*—*Recovery of Money Due to Corporation.*—Where the proof fails to show any fraud, conspiracy, mismanagement or conversion of the funds of a corporation, by its directors, in the payment of salaries to themselves, there can be no recovery by the minority stockholders for the benefit of the corporation. p. 687.

From Rush Circuit Court; *Will M. Sparks,* Judge.

Suit by Chester F. Felton and others against Thomas M. Green and others. From a decree for plaintiffs, defendants appeal. *Reversed.*

*Watson, Titsworth & Green* and *Smith, Cambern & Smith,* for appellants.

*J. D. Megee, J. H. Kiplinger* and *D. W. McKee,* for appellees.

COMSTOCK, J.—Appellees were plaintiffs and appellants were defendants below. The complaint was in one paragraph, and alleged, in substance, that the People's Natural Gas Company is a corporation, of which defendants became directors on August 1, 1899; that the capital stock is divided into 198 shares of $100 each, the defendants owning 112 shares and plaintiffs ten or more shares; that defendants conspired together for the purpose of defrauding the other stockholders and rendering the stock worthless, while electing themselves directors, by obtaining possession of all the books and papers of the corporation, by fraudulently appropriating to their own use money of the corporation that was not due or owing to them, by fraudulently increasing their salaries as directors, on August 5, 1901, from $75, to $200 per year, by fraudulently reëlecting themselves directors on August 4, 1902, and fixing their salaries at $200 per year, by fraudulently reëlecting themselves

directors on August 3, 1903, and fixing their salaries at $400 per year and free gas, which respective sums were greatly in excess of the value of their services, by failing and refusing to dig any wells, thereby rendering plaintiffs' stock worthless, by taking all of the income of said corporation derived from the sale of gas and illegally converting the same to their own use, and by refusing to keep said gasplant in good repair and to furnish an adequate supply of gas. The complaint asks that a receiver be appointed for the corporation, with instructions to take charge thereof and drill enough wells to supply the customers of the company with gas, and that defendants be required to pay such sums as may be found due from each of them on account of moneys of said corporation which were unlawfully taken by them, and for the gas used by each of them. Defendants answered in four paragraphs. The second being a general denial. A demurrer for want of facts was sustained to the first, third and fourth paragraphs of answer.

The court made a special finding of facts, substantially as follows: The People's Natural Gas Company was organized August 5, 1890. On the 11th day of the same month the stockholders duly passed the following by-laws: "The secretary, treasurer and directors shall receive such compensation for services rendered as shall be equitable and just." "This constitution, except the provision for increasing the schedule of prices to consumers, may be amended by a vote of two-thirds at any regular or special meeting of the company, provided: That notice of said special meeting has been posted in the office of the secretary at least three weeks before the same is held." Afterwards, on August 7, 1899, the stockholders duly passed a by-law fixing the directors' salaries at $75 per year. Afterwards, at the annual meeting of the stockholders, August 6, 1900, the following notice was given: "Notice is hereby given that a special meeting of the People's Natural Gas Company will be held at the office of the company, 223 Morgan street, Rushville,

Indiana, on Monday evening, August 27, 1900, at 7:30 o'clock p. m., for the purpose of voting on the following amendment to section one, article eighteen, of the constitution: 'The secretary, treasurer and directors of this company shall be entitled to such compensation for their services as may be fixed from year to year by a majority vote of the board of directors at a regular meeting of the board.'" On August 27, 1900, the stockholders met at the time and place specified in said notice, and the section just quoted was amended to read as follows: "The secretary, treasurer and directors of this company shall be entitled to such compensation for their services as may be fixed from year to year by a majority vote of the board of directors, at a regular meeting of the board." At said meeting only eighty-nine and one-half shares were represented, all of which were voted for said amendment, and no stockholder, other than the members of the board of directors, was present. On August 5, 1901, at the annual meeting of the stockholders, the defendants were duly elected directors, and on the same day said directors fixed the compensation of each of the directors at $200 per year. Each received $200 for his services for the year ending August 5, 1902, and at the annual meeting of the stockholders on August 4, 1902, all were duly reëlected directors of said company, and each was paid $200 for his services for the year ending August 6, 1903, and on August 3, 1903, they were again duly reëlected directors of said company. On October 25, 1903, said directors held a regular meeting of said board at the office of the company, and fixed the compensation of each director at $400 per year and free gas in his dwelling-house for the year ending August 3, 1904. All of said by-laws and amendments thereto were duly recorded on the proper record book of said company. Each director was paid and he received the sum of $200 on October 25, 1903, and on December 21, 1903, each received a further sum of $200, as and for his salary as director for the year ending August 3, 1904,

The value of gas used by the directors for the year ending August 1, 1904, is as follows:   Thomas M. Green, $64; Frank G. Hackleman, $85; William E. Havens, $80; Robert A. Innis, $85, and Alfonso L. Riggs, $75.

No one of the appellants has ever been paid or has he received, or converted to his use, any money or anything belonging to said company, except in payment of his salary as fixed in the manner before set forth, and none has received any money, as salary or otherwise, since August 3, 1904, and no money has been paid out of the treasury of said company, except in payment of legal obligations of said company.   All of the stockholders of said company had constructive notice of the payment to said directors of the salaries before set forth, and made no protest thereto until a few days prior to the bringing of this suit.   No conspiracy was ever entered into by said defendants to have themselves elected directors, nor was there any conspiracy of any kind ever entered into by them for the purpose of defrauding any of the stockholders of the company, or for the purpose of rendering the value of the stock of said company less valuable.   The books and records of the company have at all times been open to the inspection of any stockholder, and no stockholder has been prevented from inspecting them. Said defendants have not refused to drill new wells, but have leased new ground to drill wells, have drilled enough wells to supply their patrons with a sufficient supply of gas, have at all times kept the wells, pipe-lines and regulators of said company in good condition, and have furnished good service to the patrons of said company.   When defendants were elected directors of said company the same was in debt $3,000, and had delinquent accounts amounting to $2,603.11.   They have collected said accounts, paid said indebtedness, paid out for meters $3,226, for extension of lines $4,634.97, for drilling wells $16,456.97, for leases $3,320.56, and have paid dividends to the stockholders as follows:   For the year 1901; $7,220, or forty per cent on

the capital stock; for the year 1902, $5,940, or thirty per cent on the capital stock; for the year 1903, $3,960, or twenty per cent on the capital stock; for the year 1904, $5,940, or thirty per cent on the capital stock; and from August 4, 1904, to this date, $3,960, or twenty per cent on the capital stock. It is found that the company is not indebted to any one, and has cash on hand amounting to $1,124.64; that the gross income for the company in the year 1901 was $14,336; for 1902, $13,025; for 1903, $11,000; for 1904, $11,000; for the year ending August, 1905, it will be $11,000; that the services of the defendants as directors of said company from August 1, 1901, to August 3, 1903, are reasonably worth the sums received by them, and that the services of such defendant as a director from August 3, 1903, to August, 1904, are reasonably worth $250.

As conclusions of law the court found: (1) that the plaintiffs are not entitled to have a receiver appointed for said company. (2) That they are entitled to judgment in their favor for the use of said corporation, as follows: Against Thomas M. Green $214; against William E. Havens $230; against Frank G. Hackleman $235; against Alfonso L. Riggs $225; against Robert A. Innis $235; (3) that plaintiffs are entitled to have the amounts before specified paid by the respective parties into the treasury of said corporation for the use and benefit of said corporation. Judgment was rendered against defendants thereon.

The appellants excepted to the second and third conclusions of law.

The appellants—directors—had power to pass by-laws (§4046 Burns 1908, §3002 R. S. 1881), and by-laws themselves are sufficient notice to all stockholders, and no

1.    further notice is necessary. 1 Morawetz, Priv. Corp. (2d ed.), §479; *Supreme Lodge, etc.,* v. *Knight* (1889), 117 Ind. 489, 3 L. R. A. 409.

Directors of a private corporation, while performing the duties pertaining to their office, as defined by the charter,

by-laws or custom, are not entitled to any salary or
2. other compensation in the absence of an express prom-
ise or agreement for compensation. 3 Clark & Marshall, Priv. Corp., p. 2050.

The regulation of the affairs of the company and the salaries of the officers is a proper subject of by-laws, within the
power of stockholders. Such corporation may enter
3. into an express contract to pay a salary or other compensation to its directors. Such salary must be fixed
without fraud and by the proper authority. The directors cannot fix their own salaries, unless expressly authorized by the charter or by the stockholders to do so. 3 Clark & Marshall, Priv. Corp., p. 2059, citing: *In re Newman & Co.*, [1895] 1 Ch. 674; *Jones* v. *Morrison* (1883), 31 Minn. 140, 16 N. W. 854; *Copeland* v. *Johnson Mfg. Co.* (1888), 47 Hun 235; *Gardner* v. *Butler* (1879), 30 N. J. Eq. 702; *Miner* v. *Belle Isle Ice Co.* (1892), 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412; *Holder* v. *LaFayette, etc., R. Co.* (1873), 71 Ill. 106, 22 Am. Rep. 89. It follows that they may fix their own salaries, if authorized so to do by the stockholders.

If the stockholders of a corporation may fix the salary of the directors by by-laws, then they may delegate that authority to the directors themselves. In *United States Steel Corp.* v. *Hodge* (1903), 64 N. J. Eq. 807, 814, 54 Atl. 3, 60 L. R. A. 742, the court say: "When the contract is entered into by the stockholders with the directors, or when the stockholders expressly authorize the directors to enter into a contract, when the stockholders have notice of the directors' interest, the agreement will be unassailable in the absence of actual fraud or want of power in the corporation."

In 2 Clark & Marshall, Priv. Corp., §553 (a), the right of minority stockholders to sue in equity on behalf of themselves and other stockholders is limited to fraud, con-
4. spiracy or acts *ultra vires* against a corporation, its officers and others who participate therein, where the

minority stockholders have been injured or damaged by said acts.

In *McConnell* v. *Combination Min., etc., Co.* (1904), 30 Mont. 239, 76 Pac. 194—a case cited and quoted from by appellees—a mining and milling company, which was a corporation organized under the laws of Montana, removed its official business to, and held its regular monthly. meetings and sat as a board of directors in, another state. A resolution by four directors voted salaries to three of their number, and gave them back pay, predicated on by-laws previously passed by directors, including the first-mentioned four, and the court held this act, under all the circumstances of the case, under civil code §§2970, 2976, was fraudulent. It was held too that, though the majority stockholders of the corporation sanction the acts of its directors and officials, in legally making expenditures of the corporate funds, so as to bind themselves by estoppel, yet such acts are not binding on stockholders who neither took part in the proceedings nor sanctioned, by act or acquiescence, the making of the expenditures. In the course of the opinion the court say: ''Neither has the board of directors the inherent power to pay a salary to any director. The power so to do must emanate from the stockholders, from statute or from by-laws legally adopted.''

In 1 Thompson, Corporations (2d ed.), §1002, the author says: ''Thus, if the members of a strictly private corporation or association agree among themselves that a particular by-law is reasonable, and it is not opposed to the law in the sense of being immoral, criminal, or against public policy, the courts will give effect to it as a private contract, and will not set it aside because they may deem it unreasonable.'' Citing *Kahlenbeck* v. *Logeman* (1882), 10 Daly (N. Y.) 447. The principle is illustrated further in *Inderwick* v. *Snell* (1850), 2 M. & G. 216. At a meeting of the London Conveyance Company, regularly convened, resolutions were passed removing certain directors for

misconduct, the deed of settlement of the company providing that such meeting might remove any director for negligence, misconduct in office, or any other reasonable cause. Other directors were subsequently elected in their places. A bill was then filed by the removed directors to set aside the proceedings of the meeting and the election of the new directors. Held, on motion for an injunction to restrain the new directors from acting, that the expression "reasonable cause" in the company's deed did not refer to such a cause as in a court of justice would be held reasonable, but only to such a cause as should be deemed reasonable by the shareholders assembled at a meeting duly convened, and, therefore, that the court had no jurisdiction to interfere, nor, when no case of direct fraud was proved, to determine whether the decision of the meeting had or had not been unduly influenced by unfounded statements made by persons taking an active part in the proceedings.

Since the association is a voluntary one, this court has no power to pass on the question as to whether the amendment to article eighteen, section one, of the constitution, giving the directors authority to fix the salaries of the secretary, treasurer and directors of the company, was reasonable or unreasonable.

But appellees contend that the by-law under which appellants claim is invalid, because it was not passed by two-thirds of the holders of the capital stock, or 132 shares, the number required to amend the by-laws. In *Lowenthal* v. *Rubber Reclaiming Co.* (1894), 52 N. J. Eq. 440, 445, 28 Atl. 454, the charter was as follows: "Article 6. These by-laws may be amended, added to, altered or repealed by the affirmative vote of the stockholders representing at least two-thirds of the whole capital stock, at any annual meeting or at a special meeting called for that purpose." In the charter under consideration, there is no such provision.

Where a charter or by-law of a corporation is silent on

the subject, the common-law rule is that such of the share-holders as actually assemble at a properly convened meeting, although a minority of the whole number and representing only a minority of the stock, constitute a quorum for the transaction of business and may express the corporate will and the body will be bound by their acts.   1 Cook, Stock and Stockholders (3d ed.), §§607, 623; Morawetz, Priv. Corp. (2d ed.), §476; *Morrill* v. *Little Falls Mfg. Co.* (1893), 53 Minn. 371, 55 N. W. 547; *Field* v. *Field* (1832), 9 Wend. 395; *Everett* v. *Smith* (1875), 22 Minn. 53; *Brown* v. *Pacific Mail Steamship Co.* (1867), 5 Blatch. 525, Fed. Cas. No. 2,025.

We quote from Lindley, Company Law (5th ed.),. 308: "Where there is no special provision to the contrary, the resolution come to by the majority of those present at a meeting is the resolution of that meeting."

In the case at bar the charter provides that it "may be amended by a vote of two-thirds at any regular or special meeting of the company."   *Lowenthal* v. *Rubber Reclaiming Co., supra,* is not applicable to the case before us, and *Morrill* v. *Little Falls Mfg. Co., supra,* controls.

In *United States Steel Corp.* v. *Hodge, supra,* the court, on page 812, say: "The first reason to be considered, upon which the complainants rely to maintain their injunction, is that the action of the directors in passing the resolutions for the plan of conversion and approving the bankers' contract, was fraudulent and void, because fifteen or more of the twenty-four members of the board of directors were interested in the syndicate which was formed to assist in carrying out the bankers' contract and to share its profits, and that the plan was never properly and legally ratified by the two-thirds vote of the stockholders required by the corporation act, inasmuch as the votes upon the stock held or controlled by the bankers' firm and members of the syndicate must be counted to make up the necessary two-thirds, and without those votes the requisite number did not approve the reduction of stock.   The insistence that the votes of members of

the syndicate, who were also directors of the company, cannot be lawfully counted in order to constitute a two-thirds vote in favor of the resolution to reduce the amount of preferred stock, is without any foundation in reason or in law. They voted on the resolution not as directors, not in their fiduciary capacity, but solely in the right of the shares of stock held by them.''

In Lindley, Company Law (5th ed.), 309, it is said that ''as a matter of law as distinguished from conscience a person may vote on a question in which he happens to have a personal interest opposed to that of the company; and where the question was whether proceedings should be taken by the company to impeach the title of some of the shareholders in it, those shareholders were held entitled to vote in respect of the very shares the title to which was disputed. So a director may vote as a shareholder on the question whether a contract between the company and himself shall be entered into or be confirmed.''

The courts have no visitorial power to determine whether the by-laws of a voluntary association are reasonable or unreasonable. The only question which it can examine

7. is whether they have been adopted by the rule which has been agreed upon by the members of the association. The adoption or affirmance of any contract, agreement or allowance made by the directors or a majority of the stockholders must not be brought about by unfair means, and must not be illegal, fraudulent or oppressive toward minority stockholders.

Where the directors or officers of a corporation appropriate the income of the corporation to the payment of salaries, thus depriving the stockholders of reasonable dividends and perhaps reducing the corporation to insolv-

8. ency, such action would be a fraud upon the minority stockholders, and a court of equity would have the right to interfere.

It has been held that whenever the salary of a president

or any member of the board of directors, for personal services in the general management of the business of the company is fixed by the directors, such action is not final as against any dissentient stockholder promptly applying for relief. Such contracts are held to be voidable. *Hayes* v. *Pierson* (1899), (N. J.), 45 Atl. 1091; *Davis* v. *Thomas & Davis Co.* (1902), 63 N. J. Eq. 572, 52 Atl. 717. But to give the court authority to set aside the action of majority stockholders or board of directors, legally acting under the rules of the company, legally adopted, there must appear injustice or oppression, or circumstances amounting to fraud.

The findings, in brief, show that all the allegations of the complaint, charging conspiracy to defraud, mismanagement in the business of the company, wrongful conversion of its revenues, negligence in drilling wells and giving efficient service to the patrons are found to be untrue. Contrary to the allegations of the complaint, when defendants were elected directors of said company the same was in debt $3,000, and had $2,603.11 delinquent accounts. Said defendants have collected said accounts, paid said indebtedness, paid out for meters $3,226, for an extension of lines $4,634.97, for drilling wells $16,456.97, for leases $3,320.56, and have paid dividends to the stockholders as follows: 1901, forty per cent; 1902, thirty per cent; 1903, twenty per cent; 1904, thirty per cent; from August 4, 1904, to the date of the finding, twenty per cent.

A receiver should be appointed in cases of actual wrong, injustice and injury in the management of any business. In refusing to appoint a receiver in the case at bar, the court found that none of these conditions existed.

A portion of the fourteenth special finding of facts is that the services of each of the defendants as director of said company, from August 3, 1903, to August, 1904, are reasonably worth $250. The office of a special finding is to find the facts essential to support the judg-

ment; if not found, the judgment will fall. If, as stated in the brief of appellees, the cause was tried upon the theory that the court had the right to inquire into the reasonableness or unreasonableness of a salary, it would appear that this finding was not sufficient to warrant the second and third conclusions of law.

It is expressly found that the appellants were not guilty of fraud, conspiracy, mismanagement, or conversion of the funds of the association. To sustain the conclusion of law, there should be a finding as a fact, and not as an inference, that the salary of the directors was unreasonable or unfair. A court cannot arbitrarily declare void the acts of a private corporation or pass upon their reasonableness, unless said acts are fraudulent or oppressive.

The second and third conclusions of law in this case are not based upon such a finding of facts as the decisions and the text-books say are necessary. They are inconsistent with the special findings.

Judgment reversed, with instructions to restate said conclusions of law, and render judgment in accordance with this opinion.

Roby, C. J., did not participate.