### KUHLMANN'S ESTATE v. POSS.
### (No. 6354.)

(Court of Civil Appeals of Texas. San Antonio. April 7, 1920.)

**1. Use and occupation ⬦1 — No implication that boarder was to pay for privilege of keeping automobile under shed.**

In an action against estate of a decedent to recover for services rendered, etc., *held*, that there was no contract, expressed or implied, by which deceased was to pay plaintiff for the privilege of putting his automobile under plaintiff's cow shed.

**2. Use and occupation ⬦9—Charges by garages for housing automobiles inadmissible to show value of use of cow shed.**

Testimony concerning what was charged by garages for housing of cars by the day would not tend to prove what the privilege of putting a car under a cow shed was worth per month.

**3. Contracts ⬦10(2)—Promise to educate in return for services did not create contract.**

Promise to send one to school or college for services being rendered did not create a contract, where there was no agreement how long services were to be performed, or to what school or college the person rendering the services was to be sent, and for what length of time.

**4. Work and labor ⬦29(1)—Reasonable value implied compensation for services.**

Where services were not performed gratuitously, but with the expectation that they would be paid for, the law implies that the reasonable value thereof would be the measure of compensation.

**5. Executors and administrators ⬦221(5)— Finding as to compensation for services, to decedent held sustained by evidence.**

In an action against the estate of a decedent to recover for the services of a minor child in caring for an automobile, evidence *held* sufficient to sustain verdict in favor of plaintiff at the rate of $5 per month for 16 months.

**6. Executors and administrators ⬦210—Value of services may be recovered on failure to reward by will.**

If a decedent agreed to reward by will a certain person for services, and failed to do so, such person may recover from his estate compensation to the extent of the value of the services.

**7. Evidence ⬦571(7)—Value of services of expert nurse not basis for fixing value of services of novice.**

Testimony of a physician concerning the value of nursing by a trained or practical nurse furnished no basis for fixing the value of services performed by a woman who was neither a practical nor trained nurse.

**8. Executors and administrators ⬦221(5)— Finding of rendition of nursing service for certain period held not supported by evidence.**

In an action against the estate of a decedent for compensation for nursing, a finding of the jury that plaintiff performed such services during a certain period *held* not supported by the evidence.

**9. Executors and administrators ⬦221(2) — One working under promise of reward by will must, to recover, show absence of bequest.**

Where there was a contract to reward by will one performing services, such person could not recover the reasonable value of her services from the estate, without showing that she was not rewarded by will.

**10. Executors and administrators ⬦205(2)— Allowance of $5 per day for personal service to decedent held excessive.**

A verdict against an estate, allowing $5 per day for carrying breakfast to a sick person's bed and bathing his feet cannot be upheld, in the absence of a showing that the services were worth such an amount.

Appeal from District Court, Kendall County; R. H. Burney, Judge.

Suit by Mrs. Eugenia Poss against P. Kuhlmann, administrator of the estate of William Kuhlmann, deceased. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Davis & Long and H. B. Cline, both of San Antonio, and F. W. Schweppe, of Boerne, for appellant.

W. A. Wurzbach, of San Antonio, for appellee.

MOURSUND, J. Mrs. Eugenia Poss sued P. Kuhlmann, administrator of the estate of Wm. Kuhlmann, to recover $1,335, the amount of a claim presented by her against the estate of said Wm. Kuhlmann and rejected by said administrator. The claim consisted of various items, the nature of which will be sufficiently disclosed in discussing the assignments of error. The defendant answered by exceptions, a general denial, and a special answer. The case was submitted on special issues, in answer to which the jury found for plaintiff in sums aggregating $1,238. A remittitur of $40, covering one item, was entered, and judgment entered for the remainder.

Wm. Kuhlmann boarded with Mrs. Poss during the greater part of the 2 years pre-

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ceding his death, and her suit was to recover for her services in nursing him during several periods, her minor son's services to said Kuhlmann, the use of her shed as a garage for his automobile, the value of two mattresses and pillows, used by said Kuhlmann during his last illness and destroyed on account of their condition, and expense of cleaning the room in which he died.

[1, 2] The plaintiff sued for rent of a garage from March 1, 1917, to December 18, 1918, at a monthly rental of $7, alleged to be a reasonable rental therefor, and the jury found that Wm. Kuhlmann, at the time of his death, was indebted to plaintiff in the sum sued for, for the use of plaintiff's shed. The pleading indicates an ·express contract. As a matter of fact, no contract, express or implied, was shown to pay plaintiff anything for the privilege of putting his automobile under the cow shed. During all of the 22 months the subject of remuneration for this privilege was not mentioned or hinted at. No excuse was offered for not collecting for use of the shed just as regularly as for board, and it is evident that there was never any intention to charge for this until after Kuhlmann's death. Mrs. Poss and her children benefited by Kuhlmann's ownership of the automobile, as he frequently took them with him when he used it, and Mrs. Poss admitted that he sometimes took her to San Antonio in the automobile. The relations between Kuhlmann and the Poss family were very pleasant. One of the Poss boys referred to Kuhlmann as "Uncle Bill," and it seems that members of Kuhlmann's family were addressed as if related to the Poss family. No claims were asserted until after his death. In addition, the evidence relied on to show the reasonable value of the use of that part of the shed under which the automobile was kept was insufficient to justify a recovery. Bernhard Poss admitted he had never rented a garage in Boerne, nor a shed such as was owned by his mother, and that of his own knowledge he did not know whether it was worth $7, or 7 cents, a month. Testimony concerning what was charged by garages for housing of cars by the day would not tend to prove what the privilege of putting a car under a shed was worth per month.

[3-5] It was alleged that the estate was indebted to plaintiff for personal services rendered by her minor son, Ferdinand, to Kuhlmann at his request, which were reasonably worth $5 per month, and amounting in the aggregate to $105. The jury found that on this claim plaintiff was entitled to recover for 16 months, at the rate of $5 per month. The testimony of Ferdinand Poss shows that he performed services in driving, greasing, and taking care of Kuhlmann's car, and that it was understood and in fact agreed that such services were not to be gratuitous.

He testified that Kuhlmann promised to send him to school or college for his services; but, there being no agreement how long Ferdinand was to perform services, or to what school or college he was to be sent, and for what length of time, it is evident that the minds of the parties never met, so as to create a contract. The services not being performed gratuitously, but with the expectation that they would be paid for, the law implies that the reasonable value thereof would be the measure of compensation. The evidence supports a finding that Ferdinand performed some of the services during 16 months. If the time when Kuhlmann was in Seattle and the time when Ferdinand was sick be deducted, it will still leave 17 months. He did not drive when· Kuhlmann ·was sick, but could have taken care of the automobile though such work may not have been worth much. We conclude that the verdict as to this item is supported by evidence.

·[6] Plaintiff alleged that she performed services in nursing Kuhlmann at his request, during the month of February, 1917, for 28 days at the rate of $5 per day, and that said services were reasonably worth such sum. The jury found for plaintiff as to this item. The theory upon which liability for nursing is predicated is that Kuhlmann requested Mrs. Poss to nurse him and promised to reward her for such services. The evidence shows that whatever reward he had in mind was intended to be bestowed after his death. If he agreed to reward her by will for such services, and failed to do so, she could recover compensation to the extent of the value of the services. This being a contract, it would seem necessary to show that he failed to reward her by will. We find no such proof. We are unable, however, to find any testimony which shows in a satisfactory manner that Mrs. Poss was requested to nurse him in February, 1917, or that he ever stated that he intended to reward her for any services she may have performed during such month.

[7] There is some confusion in Mrs. Poss' testimony. She first stated that Kuhlmann had erysipelas in January, 1917, and was in bed 8 days, and in 'the house about 3 weeks, and was still in bad condition when he commenced going to town. She followed this up with the statement that treatment was necessary for him about 2 months. It seems reasonably certain from her other testimony that all of this testimony concerning erysipelas relates to the illness in January and February of the following year, for she repeatedly states that he had a cold and sore eyes in February, 1917, and so described his illness in her account against the estate. In addition she stated that he had no physician treating him at.that time, but went to the drug store himself for medicine. If he

had had erysipelas during the first illness, she would undoubtedly have so stated in her account, and have made it clear when cross-examined; for in her testimony concerning the illness in January and February, 1918, she stresses the unpleasant features connected with taking care of a patient thus afflicted. She afterwards stated that Kuhlmann was sick about a month, when he had a bad cold and sore eyes; also that he had a cold "just like croup."

[8] Excluding the testimony referred to concerning erysipelas, which we believe was intended to relate to the illness in 1918, there is not a particle of testimony that Kuhlmann was so ill as to be confined to his bed, or even the house, during February, 1917, nor any evidence concerning what nursing was required. The jury allowed her $5 per day for a month, when the alleged patient went to the drug store himself for medicines, and had no physician, and this although she failed to describe her services and to show the value thereof. Mrs. Poss testified she knew it was worth $5 a day to nurse Kuhlmann when he had the erysipelas, because she had to do washing. The testimony of Dr. Nooe, concerning the value of nursing, furnishes no basis for fixing the value of any services that may have been performed by Mrs. Poss, for he testified in substance that a trained nurse received $5 a day and expenses, when it is a case that required both day and night nursing; that he had had experience with practical nurses at $25 a week, and presumably this was for both day and night. She was not a trained nurse, nor did the doctor testify that she could qualify as a practical nurse, but said he would not call her inexperienced, as she had had some experience in nursing. No question was put to the doctor concerning the value of any services that may have been performed by Mrs. Poss, describing the extent of such services. The finding of the jury with regard to nursing for February, 1917, is not supported by the evidence.

[9] The jury found that Mrs. Poss was entitled to pay for 59 days' nursing at $5 per day during January and February, 1918. He had the erysipelas, and needed the services of a nurse, and this seems to have been the occasion which called forth his request to her to nurse him and his promise to reward her. Mrs. Poss' testimony as to the value of her services in nursing him during this illness is deemed sufficient to support a recovery for such number of days as she performed the services described by her and Dr. Nooe. She testified, if we are correct in our understanding of the evidence as hereinbefore announced, that he was in bed about 8 days, and in the house 3 weeks, and "in bad shape" when he began to go to town, and that treatment was necessary for him for about 2 months. It may be that her services were worth $5 a day for each day of the 2 months; but it seems improbable, as he was up and about his business for half of the time. We regard this finding as excessive, but, in addition, call attention to the fact that if, as indicated by the evidence, there was a contract to reward her by will, it would be necessary to show that this was not done, as she could certainly not be allowed the benefit of the contract consideration and also a recovery of the reasonable value of her services.

[10] The findings that Mrs. Poss nursed Kuhlmann for 100 days between September 8, 1918, and December 18, 1918, the date of his death, and that her services were worth $5 a day, is not supported by the evidence, and cannot be permitted to stand. He was ill, in bed, for 2 weeks after his return from Seattle, and then again just a few days preceding his death. The jury allowed for every day between said dates except one, although for several days Kuhlmann seems to have been nursing the Poss family while they had the influenza. All the evidence shows that Kuhlmann, during all the time except the two periods mentioned, was at work in his shop day after day, and painted his automobile. Ferdinand Poss testified that Kuhlmann was not sick while he was painting the automoblie, and his mother did not nurse him then. After letters had been introduced, and many witnesses had testified, and it had been plainly shown that Kuhlmann attended to his business day after day, Mrs. Poss undertook to explain further concerning his illness, and testified that during most of this period of time she brought his breakfast to his bed, and she had to bathe his swollen feet nearly every day. No witness testified that these services were worth $5 a day, but the jury allowed that sum for 100 days.

There is no evidence from which the jury was warranted in finding that the mattresses and pillows destroyed were worth $26.

We find no merit in the complaint concerning the thirteenth finding.

The judgment is reversed, and the cause remanded.